SOL SCHEINMAN, as a Stockholder of NATIONAL CONTAINER CORPORATION, Suing on Behalf of Himself and All Others Similarly Situated, Plaintiff, *v.* NATIONAL CONTAINER CORPORATION and Others, Defendants.

Supreme Court, Special Term, New York County, November 24, 1937.

268

*Donald I. Peyser,* for the plaintiff.

*Saul & Marshall M. Bernstein,* for the defendants.

LAUER, J. The theory of the first cause of action is that the defendants, by failure to disclose the extent of their holdings of preferred stock and by other means, succeeded in obtaining the approval of stockholders to a reclassification of the outstanding capital stock, as a result of which the following occurred: (1) The preferred stock, instead of being retired by the corporation at $32.50 per share, was exchanged for new common stock worth considerably in excess of that amount; (2) the book value of the new common stock received in exchange for each share of preferred stock exceeded

the book value of the preferred stock; and (3) the dividends payable upon the new common stock received in exchange for the preferred stock exceeded the fixed dividends previously payable upon the preferred stock.

The difficulty with the plaintiff's claim, so far as it is based upon the failure to redeem the preferred stock at $32.50 per share, is that the complaint contains no allegation that the corporation was financially able to exercise its right to redeem the outstanding preferred stock at $32.50 per share. Indeed such allegations on the subject of the financial condition of the corporation as are to be found in the first cause of action indicate affirmatively that the corporation was financially unable to exercise the right of redemption. Thus it is alleged in paragraph seventh that although $434,070 was required to redeem the preferred stock, the reserve for redemption amounted to only $124,810, and the earned corporate surplus available for dividends, but undeclared, to only $264,374.75, a total of $390,157.75 — less than enough to consummate the redemption. Moreover, there is no allegation that the corporation was in a position to devote its entire earned corporate surplus to the redemption of preferred stock, for this might well strip it of cash and working capital necessary for the conduct of the corporate business. Nor would borrowing funds enable the defendants to effect the redemption, for borrowing would increase the corporate liabilities and would, therefore, not increase the surplus out of which alone capital stock may lawfully be redeemed. As the complaint fails to allege or show that the corporation was financially able to redeem its outstanding preferred stock at the redemption price of $32.50 per share, the plaintiff's claim that the defendants, in order to prevent redemption and obtain more than the redemption price for their preferred stock, induced the stockholders to approve a reclassification of the outstanding capital stock, must fall.

The memorandum submitted by plaintiff states that the corporation could have sold the new common stock on the market for $472,000, thereby obtaining sufficient funds to retire all of the preferred stock. This reasoning is, however, fallacious, since the new stock to be sold under the plaintiff's suggestion was the result of the reclassification to which the preferred stockholders were not obliged or compelled to consent and to which they consented only on condition that they receive the new common stock in place of their preferred stock. Had the purpose of the proposed reclassification been to authorize the issuance of new common stock so that it might be sold in order to redeem the preferred stock from the proceeds at $32.50 per share, the preferred stockholders would have

clearly been within their rights in declining to approve such reclassification.

We turn now to the second claim, that as a result of the reclassification the book value of the new common stock received by the holders of preferred stock was increased beyond the book value previously possessed by the preferred shares. This, however, clearly caused no damage or loss to the corporation, for it merely affected the relative rights of the former preferred and common stockholders as between themselves without working financial or other injury to the corporation. The situation is no different from what it would have been had the reclassification merely increased the voting rights of the preferred stockholders to the detriment of the common stockholders. Surely the corporation would not have been damaged by such a reclassification and could not have maintained an action against its officers or directors based upon their participation in the bringing about of the reclassification.

Similar observations are applicable to the claim of the plaintiff that the reclassification changed the relative dividend rights of the former preferred and common stockholders. Instead of receiving the fixed preferred dividend of two dollars per share, the preferred stockholders, through exchanging their shares for new common stock, obtained the right to be paid unpreferred dividends of unfixed amount whenever the corporation saw fit to declare them. Assuming, for purposes of argument, that the facts alleged sufficiently establish prejudice to the common stockholders by reason of the granting to the preferred stockholders of a greater, though unpreferred participation in the dividends declared by the corporation, they do not show any wrong or injury to the corporation itself.

If the corporation were to commence an action against the defendants, based upon the increase of the book value and the increased dividend rights of the new common stock received in exchange for the former preferred stock, there would be no judgment in its favor which it could properly demand. None of its assets were in any way diminished as a result of the increase in book value and the increased dividend rights of the former preferred stock, nor were any of the corporate liabilities increased. The situation is wholly unlike that obtaining in the cases relied upon by the plaintiff. Those which present facts most closely approaching the instant case deal with the issuance by the directors of additional corporate stock without consideration or for inadequate consideration. As pointed out in *Pollitz* v. *Wabash R. R. Co.* (207 N. Y. 113, at pp. 124, 125), the issue of additional shares without adequate consideration injuriously affects the corporation itself, since it destroys

the potential ability of the corporation to secure, in cash, the value of the new shares through their future sale, or else deprives it of the moneys which the sale of the new shares in the market at that time would bring in. In the case at bar, on the other hand, no new or additional stock was issued without consideration or for inadequate consideration which the corporation could have sold for its own account, for all that happened was that the existing stock of the company was reclassified so as to change the relative rights of the preferred and common stockholders as between themselves.

The allegations of the complaint clearly indicate that the plaintiff's first cause of action is intended to be a derivative cause of action in behalf of the corporation, not a cause of action for injury to the rights of the common stockholders themselves as individuals (see, for example, the allegation of paragraph twenty-ninth that a demand on the individual defendants to bring the action on behalf of the corporation would be futile), and the plaintiff's memorandum expressly states that " plaintiff's first cause of action sets forth a derivative cause of action in behalf of the defendant corporation." As it is well settled that a derivative cause of action in behalf of a corporation may not be successfully maintained in the absence of a showing of damage or injury to the corporation itself, as distinguished from injury to some of its stockholders, the first cause of action is insufficient in so far as it is based upon changes of the relative rights of preferred and common stockholders as against each other. Thus, in *Water* v. *Waters Co.* (201 N. Y. 184), the Court of Appeals, in an opinion by WILLARD BARTLETT, J., held that the issue by a corporation of previously unissued stock without giving stockholders the right to subscribe in proportion of their holdings was not an injury to the corporation itself, and that, therefore, no derivative action on behalf of the corporation would lie.

For the reasons indicated the motion to dismiss must be granted in so far as it applies to the first cause of action.

The second cause of action is likewise insufficient. The basis of this cause of action is the claim that the new contracts obtained by the defendants provided for greater compensation than the existing contracts which were canceled. Accordingly, the plaintiff charges that the execution of the contracts was without consideration and constituted a gift to the defendants. It appears, however, from the very allegations of the second cause of action that the new contracts obligated the defendants to remain in the employ of the corporation for periods extending beyond the expiration dates of the existing contracts. The agreement of the defendants to work

for the corporation for the extended periods constitutes in itself good consideration for the new contracts. No allegation is contained in the second cause of action that the increased compensation was excessive or otherwise unfair to the corporation. The complaint proceeds solely on the theory that the new contracts are wholly without consideration. The contention of the plaintiff that the increases in compensation are voidable because a majority of the board of directors voting for the increases consisted of individual defendants personally benefiting therefrom must be overruled, for the second cause of action contains no such allegations. The allegations of that cause of action are consistent with the possibility that no defendant participated in the voting upon the question of increasing his own salary.

The third cause of action alleges that there was no consideration for the options which defendants granted to themselves. If these charges be true, a good cause of action for the cancellation of the options is stated.

The fourth cause of action contains allegations, among others, that the defendants marketed the new common stock of the corporation at a wholly inadequate and insufficient price and paid a grossly excessive underwriting commission. These allegations are sufficient from the standpoint of pleading requirements. (*Walsh v. Van Ameringen-Haebler, Inc.*, 257 N. Y. 478.)

The claim that the third and fourth causes of action are insufficient on the ground that a necessary party has not been joined must be overruled in view of the fact that an objection to a pleading on the ground of defect of parties is waived unless made within twenty days from the service of the pleading.

The motion is accordingly granted to the extent of dismissing the first and second causes of action, with ten dollars costs, with leave to serve an amended complaint within twenty days from the service of a copy of this order, with notice of entry, on payment of ten dollars additional costs. Order signed.